UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------X
TRUSTEES OF THE LOCAL 807 LABOR-
MANAGEMENT HEALTH FUND AND
TRUSTEES OF THE LOCAL 807 LABOR-
MANAGEMENT PENSION FUND,

                    Plaintiffs,

       - against -

EXPRESS HAULAGE CO.,

                    Defendant.
-------------------------------------------------X

**REPORT AND RECOMMENDATION**

07 CV 4211 (NG)

      Plaintiffs, Trustees of the Local 807 Labor-Management Health and Pension Funds (collectively, the "Funds"), commenced this action on October 9, 2007, seeking confirmation of an arbitration award, recovery of unpaid withdrawal liability, and enforcement of a demand for an audit against defendant, Express Haulage Co. (Compl.[1] ¶ 1). Plaintiffs seek redress pursuant to the terms of the Agreement and Declaration of Trust ("Trust Agreement") signed with defendant, as well as the Employee Retirement Income Security Act of 1974 ("ERISA") as amended Section 4001 *et. seq.*, 29 U.S.C. § 1301 *et. seq.* (Id.)

      When defendant failed to respond to the Complaint or otherwise appear, the Clerk of the Court entered default on February 7, 2008. On February 14, 2008, the Honorable Nina Gershon granted plaintiffs' motion for default judgment and referred the matter to the undersigned to conduct an inquest on damages and attorney's fees.

---

[1]Citations to "Compl." refer to plaintiffs' Complaint, filed October 9, 2007.

FACTUAL BACKGROUND

According to the Complaint, plaintiffs are the trustees of two benefit funds that provide

for the healthcare and pensions of the members of the Local 807 International Brotherhood of

Teamsters (the "Union"). (Compl. ¶ 1; Fernandez Aff.[2] ¶ 2). Defendant was a signatory to a

collective bargaining agreement ("CBA") with the Union, which obligated defendant to pay

certain monetary contributions and submit audit reports to the Funds as per the terms of the CBA

and Trust Agreement. (Fernandez Aff. ¶ 2, Ex. B).

In addition to specifying the required contributions to the Funds, the CBA and Trust

Agreement also set out a procedure for resolving disputes over delinquent employer

contributions. When an employer does not meet its obligation to the Funds, the trustees of the

Funds have "the power to demand, collect, and receive [e]mployer contributions and all other

money and property to which the [t]rustees may be entitled." (Fernandez Aff., Ex. B, Art. IV, §

2). Should a dispute arise, the Administrator of the Funds may initiate binding arbitration

proceedings to enforce the obligations of the employer; if the Funds prevail in the arbitration,

they are to be awarded the principal amount owed, interest, liquidated damages, attorney's fees

and costs, and arbitration fees. (Id., Ex. B, Art. IV, § 2, Art. IV, §§ 2-3 (as amended)). The

Administrator may also seek to have the arbitration award enforced by the courts in the event

that the employer refuses to comply with the arbitration. (Id.) Article IV of the Trust

Agreement also enables the Funds to seek immediate payment of an employer's withdrawal

liability if the employer defaults on its required contributions. (Id., Ex. B, Art. IV, § 7 (as

amended)).

--------------------------------------------------

[2]Citations to "Fernandez Aff." refer to the Affidavit of Alfred Fernandez, Fund Manager
of the Funds, in Support of Motion for Default, dated April 10, 2008.

On June 27, 2007, a dispute over defendant's required contributions to the Funds for the period November 1, 2006 to December 31, 2006 was referred to arbitration. (Fernandez Aff. ¶¶ 3-4). Before the arbitration hearing, plaintiffs served defendant with notice of the date and time of the hearing. (Compl. ¶ 25; Fernandez Aff., Ex. A at 1). Defendant failed to appear at the arbitration. (Compl. ¶ 26; Fernandez Aff., Ex. A at 2). After considering the evidence presented at the hearing, Dr. Joseph A. Harris, acting as impartial arbitrator for the dispute, found that defendant violated the CBA by failing to pay the disputed contributions and awarded damages to the Funds based on past records of defendant's contributions (the "Award"). (Fernandez Aff. ¶¶ 3-5, Ex. A at 6).

After defendant failed to remit payment in compliance with the terms of the Award, plaintiffs filed this Complaint seeking enforcement of the Award, pursuant to the Court's authority under the Federal Arbitration Act, 9 U.S.C. § 9. (Compl. ¶ 42).[3] Plaintiffs also petition the Court to hold defendant liable for its withdrawal liability, as specified in Section 4219(c) of ERISA, 29 U.S.C. § 1399(c). (Id. ¶ 35). Finally, plaintiffs seek an Order requiring defendant to submit to an audit and directing defendant to pay any additional payroll delinquencies revealed in the audit, pursuant to Sections 502(a) and (g) of ERISA, 29 U.S.C. §§ 1132(a)(3)(B), (g)(1), and (g)(2). (Id. ¶ 37-41).

When defendant did not answer or otherwise move with respect to the Complaint, the Clerk of the Court entered a default on February 7, 2008, pursuant to Rule 55(a) of the Federal Rules of Civil Procedure. Thereafter, when defendant failed to move to set aside the default

---

[3]The Court notes that certain paragraphs of plaintiff's Complaint are not numbered correctly. The Court has renumbered the paragraphs of the Complaint accordingly; citations in this Report and Recommendation reflect the corrected paragraph numbers.

pursuant to Fed. R. Civ. P. 55(c), the district court granted plaintiffs' motion for default judgment and referred the matter to the undersigned for the purpose of conducting an inquest and to report and recommend a damages award.

The Funds seek a total award of $1,326,928.28, consisting of the principal amount owed, withdrawal liability, interest on the principal and withdrawal liability, liquidated damages on the principal and withdrawal liability, attorney's fees and costs, and arbitration fees. (Paster Aff.[4] ¶ 12). For the reasons set forth below, the Court respectfully recommends that, pursuant to 29 U.S.C. §§ 1132(g)(2) and 1399(c), plaintiffs be awarded $1,412,022.84.


## DISCUSSION

A. Standards

    1. Default Judgment and Arbitration Exception

Plaintiffs move for default judgment pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure. Prior to the district court's granting of default judgment, the Clerk of the Court entered a default because defendant "failed to plead or otherwise defend [against the instant Complaint]." Fed. R. Civ. P. 55(a). A clerk's entry of default is not the same as a default judgment granted by the court. Rather, Rule 55 sets forth a two-step process in which first a default, and then a default judgment, is entered. See Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95 (2d Cir. 1993). After a default has been entered against a party, if that party fails to appear or otherwise move to set aside the default pursuant to Rule 55(c), a default judgment may be entered. See Fed. R. Civ. P. 55(b).

---

[4]Citations to "Paster Aff." refer to the Affidavit of Rachel Paster, Esq. in Support of Motion for Default, dated April 16, 2008.

In this case, the Clerk of the Court entered default against defendant on February 7, 2008 and the motion for default judgment was granted on February 14, 2008.

The Second Circuit has warned that default judgment is an extreme remedy that should be used only when the need to expeditiously move a case forward trumps a party's right to be heard before a court of law. See Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981). When evaluating whether to grant a default judgment, the Court must weigh the costs of prolonged litigation against offering "litigants a reasonable chance to be heard." Enron Oil Corp. v. Diakuhara, 10 F.3d at 95-96; see also Meehan v. Snow, 652 F.2d at 277. It is well-settled that defaults are "generally disfavored" and "doubts should be resolved in favor of the defaulting party." Enron Oil Corp. v. Diakuhara, 10 F.3d at 95-96. As such, courts should take great care in entering default judgment, ensuring if at all possible that both parties may have their cases judged on the merits. Id.

When a case involves the confirmation of an arbitration award, different standards and procedures apply than for ordinary motions for default judgment. The Second Circuit has held that "default judgments in confirmation/vacatur proceedings are generally inappropriate." D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 109 (2d Cir. 2006). The Second Circuit's decision was based on the fact that arbitration proceedings act as a form of court record, documenting the positions of both sides in a case. Id. Thus, Blair instructs district courts to treat motions for default judgment on confirmation of arbitration awards as they would motions for summary judgment. Id. at 109-10. Accordingly, courts must examine the arbitration proceedings to ensure that "'no material issue of fact remains for trial.'" Id. at 110 (citing Vermont Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 246 (2d Cir. 2004)). In cases involving arbitration awards, even "unopposed motions for summary judgment must 'fail where the undisputed facts

5

fail to show that the moving party is entitled to judgment as a matter of law.'" Id. (quoting Vermont Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d at 244).

In this case, the distinction between moving for default judgment and moving for summary judgment in confirmation of an arbitration proceeding is purely academic. Defendant did not contest plaintiffs' claims during the arbitration hearing, and the arbitrator noted defendant's failure to appear and awarded plaintiffs damages accordingly. (Fernandez Aff., Ex. A). For the Court's purposes, defendant never put forward a case in either the arbitration or judicial phases of this dispute. (Id.; Compl. ¶¶ 26-28). As such, a more stringent review of plaintiffs' case under the summary judgment standard does not improve defendant's position; plaintiffs' claims, from the beginning, have gone uncontested.

Plaintiffs have made a legitimate claim under 29 U.S.C. § 1145, which states:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145. Defendant was required, pursuant to the CBA and Trust Agreement, to contribute certain amounts of its earnings to the Funds and the failure to meet these obligations warrants relief. (Fernandez Aff. ¶ 2, Ex. B).

While plaintiffs' claim to confirm the arbitration award must be judged according to the Blair standard, their separate claim for withdrawal liability is analyzed under the well-established guidelines for default judgments.[5] A court possesses significant discretion and may

---

[5]The claim for withdrawal liability was not raised during the arbitration proceeding; it is a separate cause of action from the claim seeking confirmation of the arbitration award. (See Fernandez Aff., Ex. A; Compl. ¶ 33).

consider a number of factors in deciding whether or not to grant a default judgment, including "whether the grounds for default are clearly established," "the amount of money potentially involved," and the record of attempts to involve the defaulting party in the proceedings. See Hirsch v. Innovation Int'l, Inc., No. 91 CV 4130, 1992 WL 316143, at *2 (S.D.N.Y. Oct. 19, 1992) (citations omitted). Additionally, a court may consider whether material issues of fact remain, whether the facts alleged in the complaint state a valid cause of action, whether plaintiff has been substantially prejudiced by the delay involved, and how harsh an effect a default judgment might have on the defendant. See Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981); 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure, §§ 2685, 2688 (3d ed. 1998).

It is beyond dispute that defendant in this case is in default. Not only has defendant failed to respond to the motion for default judgment, see Hirsch v. Innovation Int'l, Inc., 1992 WL 316143, at *2 (noting that "[the defendant's] default is crystal clear–it does not even oppose this motion"), but defendant, a corporation, has not obtained counsel. Such a failure to obtain counsel constitutes a failure to defend because corporations cannot proceed in federal court without counsel. See Shapiro, Bernstein & Co. v. Cont'l Record Co., Inc., 386 F.2d 426, 427 (2d Cir. 1967) (per curiam) (noting the well-settled law that a corporation cannot appear without an attorney); see also Jones v. Niagara Frontier Transp. Auth., 722 F.2d 20, 22 (2d Cir. 1983) (discussing the rationale for requiring corporations, as "artificial" entities, to appear through counsel only). Although the request for damages in this case involves a significant amount of money (Paster Aff. ¶ 12), defendant has been given ample opportunity to contest the allegations. See Hirsch v. Innovation Int'l, Inc., 1992 WL 316143, at *2 (dismissing a motion for default judgment to allow defendant additional time to respond because plaintiffs' request for damages

ran into the millions of dollars). Since defendant has "ceased its operations" (Fernandez Aff. ¶ 7) and has not appeared at any point in the case, the Court does not see any reason for further delay of the proceedings.

Given that plaintiffs have duly served all orders and motions on defendant, and that defendant has refused to attend any hearing or move in any way whatsoever with respect to the instant case–or, for that matter, in the arbitration hearings–this Court respectfully recommends that default judgment be granted against defendant.

2. Damages Awards in Default Judgments

Once a default judgment is entered, the defendant is deemed to have admitted all of the well-pleaded allegations in the complaint pertaining to liability. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992), cert. denied, 506 U.S. 1080 (1993); Montcalm Publ'g Corp. v. Ryan, 807 F. Supp. 975, 977 (S.D.N.Y. 1992) (internal citations omitted). For the purposes of an inquest, a court accepts as true all factual allegations in the complaint, except those relating to damages. See Au Bon Pain Corp. v. Artect, Inc., 653 F.2d at 65. The plaintiff still has the burden of proving damages, either by an evidentiary hearing or, should a defendant fail to appear, exhibits submitted by the plaintiff. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d at 158; see also Levesque v. Kelly Commc'ns, Inc., No. 91 CV 7045, 1993 WL 22113, at *4 (S.D.N.Y. Jan. 25, 1993); Fustok v. ContiCommodity Servs., Inc., 122 F.R.D. 151, 156 (S.D.N.Y. 1988).

By Order dated February 20, 2008, the Court directed the parties to submit papers on the question of damages no later than March 20, 2008. This deadline was subsequently extended to April 17, 2008. Defendant was served with a copy of this Order on March 26, 2008. Defendant neither submitted papers nor asked for any extensions. Therefore, the Court considers defendant

to have waived the right to challenge damages claimed by plaintiffs.

Plaintiffs have not only submitted copies of the Trust Agreement and an actuary's report, but they have also submitted to the Court the arbitrator's Award. (Fernandez Aff., Exs. A, B, C). When an arbitration award constitutes the basis for a party's claim to damages, the Second Circuit has stated:

> Confirmation of an arbitration award is a "summary proceeding that merely makes what is already a final arbitration award a judgment of the court," and the court "must grant" the award "unless the award is vacated, modified, or corrected." 9 U.S.C. § 9. The arbitrator's rationale for an award need not be explained, and the award should be confirmed "if a ground for the arbitrator's decision can be inferred from the facts of the case."

D.H. Blair & Co. v. Gottdiener, 462 F.3d at 110 (quoting Florasynth, Inc. v. Pickholz, 750 F.2d 171, 176 (2d Cir. 1984) and Barbier v. Shearson Lehman Hutton, Inc., 948 F.2d 117, 121 (2d Cir. 1991) (internal quotations and citations omitted)). Accordingly, in evaluating plaintiff's petition to confirm the result of the arbitration, the Court need only ensure that the arbitrator had some grounds on which to grant the damages spelled out in the Award.

B.  Arbitrator's Award

The benefit plans operated by plaintiffs fall under the purview of ERISA in that the Funds are run by an organization of employees with the goal of providing health and retirement benefits to members of the employee organization, in accordance with 29 U.S.C. § 1002. ERISA specifies the types of damages to be awarded when judgments are entered in favor of benefit plans. See 29 U.S.C. § 1132(g)(2). These include the following:

> (A) the unpaid contributions,
> (B) interest on the unpaid contributions,
> (C) an amount equal to the greater of--

(i) interest on the unpaid contributions, or
(ii) liquidated damages provided for under the plan in an
amount not in excess of 20 percent (or such higher
percentage as may be permitted under Federal or State law)
of the amount determined by the court under subparagraph
(A),
(D) reasonable attorney's fees and costs of the action, to be paid by
the defendant, and
(E) such other legal or equitable relief as the court deems
appropriate.

Id. In this case, the arbitrator awarded plaintiffs the following: 1) a total of $35,609.28 in

delinquent contributions; 2) $1,607.24 in interest running from the date the delinquent

contributions were due through June 27, 2007, the date of the arbitration, and additional interest

accruing at the rate of $17.24 per day; 3) $7,121.86 in liquidated damages, representing 20% of

the delinquent contributions; 4) $1,200 in arbitration costs; and 5) $587.92 in attorney's fees and

costs, as well as any additional fees and costs "incurred in any post-judgment collection

proceeding." (Fernandez Aff., Ex. A at 6).

    1. Unpaid Contributions

    According to the CBA, defendant was obligated to contribute an hourly rate of $5.990

per employee to the Health Fund and an hourly rate of $5.365 per employee to the Pension Fund

during the period in question, November 1, 2006 to December 31, 2006.  (See Fernandez Aff.,

Ex. A at 5).  By examining defendant's last remittance report, submitted for the month of

October 2006, the arbitrator affirmed plaintiffs' calculation that defendant owed $18,784.64 to

the Health Fund and $16,824.64 to the Pension Fund for the two subsequent months of

contributions.  (Id.) The Court finds that the arbitrator had sufficient grounds to endorse these

figures, and accordingly respectfully recommends that the arbitrator's Award, assessing damages

totaling $35,609.28, representing the delinquent contributions of November and December 2006,

be confirmed.

2. Interest on Unpaid Contributions

Pursuant to 29 U.S.C. § 1132(g)(2), plaintiffs may collect interest on unpaid contributions from the date the contributions became due. The Trust Agreement specifies that the interest rate applied will be the rate charged by the Funds at the time the delinquency occurred. (Fernandez Aff., Ex. B, Art. IV). The arbitrator calculated that defendant owed $1,607.24 in interest as of the date of the arbitration, June 27, 2007, and additional interest accruing thereafter at a rate of $17.24 per day. (Id., Ex. A at 6).

Although it is unclear what formula or percentage the arbitrator used in reaching this amount,[6] the Court can infer in this situation that the arbitrator had some basis – documentary, testimonial, or otherwise – on which to determine this amount of interest. See D.H. Blair & Co. v. Gottdiener, 462 F.3d at 110 (noting that an arbitration award should be confirmed "if a ground for the arbitrator's decision can be inferred from the facts of the case" and that "[o]nly a barely colorable justification for the outcome reached by the arbitrator[] is necessary to confirm the award") (internal citations and quotations omitted). (See Fernandez Aff., Ex. A at 2 (noting that

---

[6]The Court notes that in certain submissions, plaintiffs request interest accruing at 18% per annum from the date the delinquent contributions became due to entry of judgment. (See Paster Aff. ¶ 10). Certain other submissions indicate either that the interest rate charged by the Funds at the time of the delinquency was 18%, or that the arbitrator based his award of interest on this percentage. (See Compl. ¶ 22; Fernandez Aff. ¶ 5). However, nowhere in the CBA, the numerous amendments to the CBA, or the arbitrator's Award is the Fund's current rate of interest mentioned, and the Court notes that the amount of interest the arbitrator actually awarded is equal to approximately 9.5% per annum. Specifically, the Court assumes that the arbitrator's grant of daily interest reflects the percentage rate awarded by the arbitrator. Absent actual documentation that the proper rate is 18% or any indication by plaintiffs that the arbitrator erred in assessing the amount of interest, and in light of the standard by which the Court assesses a motion to uphold an arbitration award, the Court declines to assess interest at 18% as now requested by plaintiffs and instead recommends that the arbitrator's Award of interest be confirmed.

the arbitrator "accepted evidence, both oral and written, from the Funds")). As such, the Court

respectfully recommends that the arbitrator's award of $1,607.24 in interest accrued to the date

of the arbitration, as well as the grant of $17.24 in daily interest accruing thereafter, which totals

$7,447.68, be confirmed.[7] Should plaintiffs wish to submit further papers in support of their

request for interest, the Court respectfully recommends that they be given until September 16,

2008 to do so.

   3. Liquidated Damages

   Pursuant to 29 U.S.C. § 1132(g)(2)C) and the Trust Agreement, plaintiffs are also

entitled to receive liquidated damages equal to the greater of interest on unpaid contributions or

20% of unpaid contributions. (See Fernandez Aff., Ex. B, Art. IV, § 4). The arbitrator correctly

determined that 20% of the unpaid contributions was equal to $7,121.86, and that this amount

was more than the interest due at the time of the arbitration. The Court respectfully recommends

that this portion of the arbitrator's Award also be confirmed.[8]

---

[7]In their Complaint, plaintiffs indicate that they seek additional interest "on the amounts owed under the Arbitrator's Award other than the unpaid contributions at the rate of 9 percent per year," running from the date of the Award to entry of judgment. (Compl. at 9). Plaintiffs' subsequent submissions, however, contain no mention of this request, much less any arguments in support of it, and it appears that plaintiffs chose to focus on their request for 18% interest, without regard to the terms of the arbitrator's Award. Although "[t]he decision whether to grant prejudgment interest in arbitration confirmations is left to the discretion of the district court," SEIU v. Stone Park Assocs., LLC., 326 F. Supp. 2d 550, 555 (S.D.N.Y. 2004), the Court finds in this instance that plaintiffs have failed to present sufficient arguments to justify an award of prejudgment interest at this time.

[8]The arbitrator also awarded plaintiffs $1,200 in arbitration costs and $587.92 in attorney's fees and other costs. As plaintiffs incurred additional fees and costs in seeking to enforce the arbitration Award, the Court addresses plaintiffs' request for those amounts in Section E, infra.

C. Withdrawal Liability

Pursuant to 29 U.S.C. § 1399, plaintiffs further seek to hold defendant liable for the entire amount of its withdrawal liability, $936,193.00.[9] (Id. ¶¶ 7-8; Compl. ¶ 33). ERISA defines withdrawal liability as an employer's share of the unfunded vested benefits of a multiemployer benefit plan, such as the Funds plaintiffs represent. See 29 U.S.C. § 1381. If an employer is found to be in "complete withdrawal" of a benefit plan, as defined in 29 U.S.C. § 1383, the plan sponsor then determines the employer's withdrawal liability. See Miller v. Collectron Corp., No. 98 CV 2221, 1999 WL 730981, at *1 (E.D.N.Y. Sept. 16, 1999). Prior to initiating a legal claim for withdrawal liability, the plan must first notify the employer of its liability and offer a schedule of payments; the employer is subsequently given an opportunity to contest the plan's liability calculations and payment plans. See UNITE HERE Workers Pension Fund v. Westchester Lace & Textiles, Inc., No. 05 CV 6138, 2006 WL 2051107, at *5 (S.D.N.Y. July 25, 2006) (citing 29 U.S.C. § 1399). Should a dispute remain, the parties must commence arbitration proceedings to resolve the matter. See Miller v. Collectron Corp., 1999 WL 730981, at *1; see also 29 U.S.C. § 1401(a)(1). "Failure to demand arbitration timely results in a waiver of arbitration, in which case 'the amounts demanded by the plan sponsor . . . shall be due and owing on the schedule set forth by the plan sponsor.'" UNITE HERE Workers Pension Fund v. Westchester Lace & Textiles, Inc., 2006 WL 2051107, at *5 (quoting Bowers v. Campania Peruana de Vapores, S.A., 689 F. Supp. 215, 219 (S.D.N.Y. 1988) (modification in original) (citing cases)). In addition, "failure of the employer to make any withdrawal liability payment . . . . shall be treated in the same manner as a delinquent contribution" under ERISA. 29 U.S.C. §

---

[9]Plaintiffs revised their initial calculation of defendant's withdrawal liability, reducing the demand from $1,525,292.00 to $936,193.00. (Id. ¶ 8).

1451(b). Thus, an employer in default becomes liable for the entire sum of the withdrawal liability, as well as interest, liquidated damages, and attorney's fees and costs. See United Nat'l Ret. Fund v. Fairbrooke Co., No. 04 CV 2354, 2006 WL 770487, at *2-3 (S.D.N.Y. Mar. 23, 2006).

Here, plaintiffs have submitted detailed calculations to support their claim that defendant owes $936,193.00 in withdrawal liability. (Laccetti Aff.,[10] Ex. A). Having reviewed the calculations and methodologies used by plaintiffs' actuary, the Court finds that they appear to be correct. Also, the Court's review of plaintiffs' submissions demonstrates that all appropriate steps were taken to notify defendant of the outstanding withdrawal liability. Plaintiffs found that defendant had incurred a complete withdrawal when defendant ceased its operations and stopped making contributions to the Funds in December 2006. (Fernandez Aff. ¶ 7). By a letter dated April 12, 2007, sent via certified mail to defendant's place of business, the Administrator of the Funds, Alfred Fernandez, informed defendant of its total withdrawal liability, provided a payment plan, and warned that failure to make the scheduled payments would result in the entire withdrawal liability becoming immediately due. (Id., Ex. C). Defendant did not make any payments toward its withdrawal liability, nor did defendant seek arbitration or contest the withdrawal liability with the Funds. (Id. ¶ 10). As such, plaintiffs filed the instant claim for withdrawal liability. (Id. ¶ 11). Since defendant is unquestionably in default and has not even attempted to address its withdrawal liability, the Court accordingly respectfully recommends that plaintiffs be awarded the full amount of the withdrawal liability: $936,193.00.

The Trust Agreement makes clear that defendant owes interest on its withdrawal liability

---

[10]Citations to "Laccetti Aff." refer to the Affidavit of Nicholas Laccetti, plaintiffs' actuary, in Support of Motion for Default, dated April 14, 2008.

at 18% per annum running from June 12, 2007, the date defendant's first payment was due, to the date of this Report.[11] (See Fernandez Aff., Ex. B, Art. IV, § 7). The Court respectfully recommends that plaintiffs be awarded $206,834.53 in interest.

Defendant is also liable for liquidated damages equal to the greater of the interest on the withdrawal liability or 20% of withdrawal liability. (See id.). According to the figures provided, 20% of the withdrawal liability would be equal to $187,238.60. As this figure is less than the amount of interest awarded, the Court respectfully recommends that plaintiffs be awarded an additional $206,834.53 in liquidated damages, equal to the amount of interest assessed.

D. Audit Request

Plaintiffs seek an Order requiring defendant to comply with the CBA, the Trust Agreement, and ERISA, by submitting to an audit of the relevant books and records from July 1, 2005 through the date that defendant ceased to operate. (Compl. ¶ 18). Plaintiffs further request that defendant be directed to pay any additional payroll delinquencies revealed in the audit, pursuant to Sections 502(a) and (g) of ERISA, 29 U.S.C. §§ 1132(a)(3)(B), (g)(1), and (g)(2). (Id. ¶ 37-41).

Injunctive relief is appropriate under Section 1132(g)(2)(E) of ERISA, which states that in a successful action to enforce the requirements of ERISA, an ERISA plan may recover "such other legal or equitable relief as the court deems appropriate." 29 U.S.C. § 1132(g)(2)(E); see Beck v. Levering, 947 F.2d 639, 641-42 (2d Cir. 1991), cert. denied, 504 U.S. 909 (1992); Lanzafame v. L & M Larjo Co., Inc., No. 03 CV 3640, 2006 WL 2795348, at *9 (E.D.N.Y. Sept.

---

[11]The Court notes that plaintiffs are entitled to additional interest that accrues between the issuance of this Report and its adoption, should it be adopted.

15

26, 2006) (citing cases); King v. Nelco Indus., Inc., No. 96 CV 4177, 1996 WL 629564, at *1

(E.D.N.Y. Oct. 23, 1996). In a case such as this, where defendant is in default and where the

applicable statute provides for injunctive relief as a possible remedy, the court may issue an

injunction provided that plaintiffs meet the requirements for obtaining a permanent injunction,

which include a showing of "'irreparable harm should the injunction not be granted.'" King v.

Nelco Indus., Inc., 1996 WL 629564, at *1 (quoting Haitian Ctrs. Council, Inc. v. McNary, 969

F.2d 1326, 1338 (2d Cir. 1992), vacated as moot, 509 U.S. 918 (1993)).

In this case, where defendant has defaulted, as in King v. Nelco Indus., Inc., and has

further refused to submit to the requested audit, plaintiffs have provided the Court with sufficient

evidence "that defendant intends to frustrate any judgment . . . or show 'contempt for the judicial

process.'" Id. (internal citations omitted). Thus, this Court recommends that plaintiffs' request

for an order requiring defendant to submit to an audit be granted.

If defendant complies with the Order to submit to an audit, then this Court respectfully

recommends that the matter be referred to the undersigned to consider any request for delinquent

contributions determined through the audit to be due and owing, along with any requests for

interest and liquidated damages.


E. Attorney's Fees and Costs

Pursuant to 29 U.S.C. § 1132(g)(2)(D) and the Trust Agreement, plaintiffs petition the

Court to collect arbitration fees, attorney's fees, and costs. (Paster Aff. ¶¶ 6-8).[12] Taking each of

---

[12]The Court notes that although the arbitration Award included a grant of attorney's fees and costs, it appears that plaintiffs do not seek to enforce that portion of the award and instead petition for an award of the fees and costs incurred both in pursing the arbitration and in the subsequent filing of the underlying Complaint and supporting documents.

these in turn, courts in this district have awarded arbitrator's fees when liability for such fees is specified in a collective bargaining agreement or trust agreement. See Raff v. Maggio, 743 F. Supp. 147, 148 (E.D.N.Y. 1990); see also Local 144, Hotel, Hosp., Nursing Home & Allied Servs. Union v. Sands, No. 87 CV 2778, 1992 WL 15154, at *1 (S.D.N.Y. Jan. 21, 1992); Stewart v. State Farm Fire & Cas. Co., No. 96 CV 441, 2001 WL 209915, at *4-5 (E.D. Pa. Feb. 26, 2001) (ordering parties to pay a court-appointed arbitrator applicable fees). The Trust Agreement allows plaintiffs to collect the entire amount of arbitrator's fees from defendant if the Funds are successful in arbitration. (Fernandez Aff., Ex. B, Art. IV, § 2, as amended).

In this case, plaintiffs seek $1,200.00 in arbitrator's fees, which is the amount the arbitrator billed for his time. (Paster Aff. ¶ 8; Fernandez Aff., Ex. A). In similar types of litigation involving union/employer contribution disputes occurring in the New York City area, arbitrators have often charged thousands of dollars per day at arbitration hearings. See United House of Prayer for All People of the Church on the Rock of the Apostolic Faith v. L.M.A. Int'l, Ltd., 107 F. Supp. 2d 227, 229 (S.D.N.Y. 2000); see also Local 144, Hotel, Hosp., Nursing Home & Allied Servs. Union v. Sands, 1992 WL 15154, at *1. Accordingly, pursuant to the terms of the Trust Agreement, the Court finds the amount requested here to be reasonable and respectfully recommends that plaintiffs be awarded $1,200.00 in arbitrator's fees.

With respect to attorney's fees, ERISA provides that when an employee benefit fund prevails in a legal action, the defendant is liable for legal costs. 29 U.S.C. § 1132(g)(2)(D). The Trust Agreement here further establishes that the employer is liable for the benefit plan's legal costs once the employer is in default. (Fernandez Aff., Ex. B, Art. IV, § 4). Plaintiffs request $8,467.50 in legal fees.

When assessing whether claimed legal costs are reasonable, the Court determines the

"presumptively reasonable fee" for an attorney's services by looking to what a reasonable client would be willing to pay. See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany and Albany County Bd. of Elections, 522 F.3d 182, 183-84 (2d Cir. 2008). In order to calculate the presumptively reasonable fee, a court is first required to determine a reasonable hourly rate for the legal services performed. Id. The Second Circuit has adopted the following factors, inter alia, to guide the court's inquiry as to what constitutes the reasonable hourly rate:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases . . .

Id. at 187 n.3 (citing Johnson v. Ga. Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974)). A number of recent cases have applied some of these Arbor Hill factors when awarding attorney's fees. See Lochren v. County of Suffolk, No. 01 CV 3925, 2008 WL 2039458, at *2 (E.D.N.Y. May 9, 2008); see also Cruz v. Henry Modell & Co., Inc., No. 05 CV 1450, 2008 WL 905351, at *3 (E.D.N.Y. Mar. 31, 2008).

Courts are also instructed to balance:

> the complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively . . ., the timing demands of the case, whether the attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether the attorney might have initially acted pro bono . . ., and other returns (such as reputation, etc.) the attorney might expect from the representation.

Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d at 184; see

also Heng Chan v. Sung Yue Tang Corp., No. 03 CV 6048, 2007 WL 1373118, at *2 (S.D.N.Y. May 8, 2007) (applying some of these Arbor Hill factors).

In awarding attorney's fees in the present case, the Court is guided principally by the fact that default actions are relatively simple legal matters, taking into account as well the attorney's degree of skill, and the Court's own experience dealing with similar claims.

Plaintiffs' counsel, Rachel Paster, Esq., has submitted detailed contemporaneous billing records, as required by New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983). (Paster Aff., Ex. A). Paster, who was admitted to the bar in 2001, claims that she spent a total of 33.5 hours working on this case, billing 16.5 of those hours at a rate of $235.00 and the remainder at $270.00. (Paster Aff. ¶¶ 5-6).[13] The Court notes as an initial matter that Paster spent longer on this case than is typical for an ERISA default. See, e.g., Martone v. HST Roofing, Inc., No. 03 CV 4165, 2007 WL 595054, at *3 (E.D.N.Y. Feb. 22, 2007) (finding 20 hours of billable time spent on an ERISA default to be reasonable); see also La Barbera v. David Liepper & Sons, Inc., No. 06 CV 1371, 2006 WL 2423420, at *5 (E.D.N.Y. July 6, 2006) (finding 17.17 hours reasonable). Yet, after reviewing Paster's records, it appears that a good portion of the additional time spent on this case came from researching the withdrawal liability aspect of the claim, which is often not a part of ERISA default cases. Having reviewed the records; the Court finds that Paster spent a reasonable amount of time on the tasks indicated in her records. (Paster Aff., Ex. A).

With respect to the hourly rate requested, the Court finds that Paster's requested rate is consistent with the amount charged by other attorneys for work on similar matters. See, e.g.,

_____

[13]Counsel's billing rate increased from $235.00 to $270.00 as of January 1, 2008. (Id. ¶ 6).

19

LaBarbera v. On Par Contracting Corp., No. 06 CV 6244, 2007 WL 2362353, at *3 (E.D.N.Y. Aug 14, 2007) (finding the rate of $275.00 per hour reasonable in a default ERISA matter); Martone v. HST Roofing, Inc., 2007 WL 59054, at *2-3 (determining that a rate of $250.00 per hour should be applied to work performed pertaining to a defaulting defendant); Finkel v. Tech Man, Inc., No. 06 CV 2264, 2007 WL 433399, at *4 (E.D.N.Y. Feb. 6, 2007) (finding a rate of $200.00 per hour reasonable in an ERISA default matter for an attorney with approximately six years' experience); LaBarbera v. LES Sub-Surface Plumbing, Inc., No. 03 CV 6076, 2006 WL 3628024, at *8 (E.D.N.Y. Dec. 11, 2006) (reducing $300.00 and $340.00 hourly rates to $250.00 per hour because of the "non-complex" work involved in a default ERISA action). Therefore, the Court respectfully recommends that plaintiffs be awarded $8,467.50 in legal fees, representing 33.5 hours of work at hourly rates of either $235.00 or $275.00.

Finally, plaintiffs ask to be reimbursed for $707.22 in filing, service, postage, and delivery fees. (Paster Aff. ¶ 7). In support of this request, plaintiffs' counsel included a record of all the expenses incurred in this case. (Id., Ex. B). Plaintiffs are entitled to filing and other court expenses under 29 U.S.C. § 1132(g)(2)(D) and under the terms of the Trust Agreement. (Fernandez Aff., Ex. B, Art. IV). Thus, the Court respectfully recommends that plaintiffs be awarded $707.22 for their filing expenses.


## CONCLUSION

The Court, having conducted an inquest on damages, respectfully recommends that: 1) the arbitration Award granting plaintiffs $35,609.28 in delinquent contributions, $1,607.24 in interest with $17.24 accruing per day from June 28, 2007, and $7,121.86 in liquidated damages be confirmed, with leave for plaintiffs to submit documents in support of their request for

prejudgment interest; 2) plaintiffs be awarded $936,193.00 in withdrawal liability, with interest assessed at 18% per annum from June 12, 2007 and liquidated damages equal to the amount of interest, and 3) that defendant be Ordered to submit to an audit of its books and records for the period from July 1, 2005 to December 20, 2006. The Court further recommends that plaintiffs be awarded $1,200 in arbitration fees, $8,467.50 in attorney's fees, and $707.22 in costs, for a total award of $1,412,022.84.[14]

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within ten (10) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the district court's order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72(b); Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).

The Clerk is directed to send copies of this Report and Recommendation to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
September 2, 2008

Cheryl L. Pollak
United States Magistrate Judge

---

[14]See Table A attached hereto.

21

**Table A**

| | |
|---|---|
| Unpaid contributions | $35,609.28 |
| Unpaid contributions–interest through arbitration date | $1,607.24 |
| Unpaid contributions–interest since arbitration date<br>= 17.24/day • 432 days<br>6/28/07 –> 9/2/08 = 432 days | $7,447.68 |
| Unpaid contributions–liquidated damages | $7,121.86 |
| Withdrawal liability | $936,193.00 |
| Withdrawal liability–interest<br>= 448/365 • 0.18 • 936,193.00<br>6/12/07 –> 9/2/08 = 448 days | $206,834.53 |
| Withdrawal liability–liquidated damages | $206,834.53 |
| Arbitration fees | $1,200.00 |
| Attorney's fees | $8,467.50 |
| Filing fees | $707.22 |
| **Total** | **$1,412,022.84** |